Thank you, Your Honor. May it please the Court, I'd like to reserve two minutes for rebuttal. Appellant Sammy Yetisen respectfully requests that this Court reverse the judgment of the District Court. On appeal, the government does not defend the District Court's rationale for granting the government's motion for judgment on the pleadings, and instead asks this Court to affirm on two different bases. The District Court below granted the government's motion and three provisions regarding the good moral character requirement for naturalization. The Court below held that Ms. Yetisen's 2012 conviction for war crimes rendered her per se ineligible to naturalize in 2002. In so holding, the District Court misapplied each of these provisions, which require that a conviction exist at the time of naturalization. The government's alternative bases for affirmance both suffer the same flaw. They ask the Court to wade into contested issues and to resolve those contested facts in the government's favor. The government's request is at odds with its burden in a denaturalization case to prove that case by clear, unequivocal, and convincing evidence that does not leave the issue in doubt. The government's arguments are also at odds with the Rule 12c standard. The government asks the Court to affirm first based on count four, which is for illegal procurement of naturalization. On appeal, the government says that this count is based on the catch-all moral character provision that appears in 8 U.S.C. 1101F. The parties agree that this catch-all provision is discretionary. When evaluating Ms. Yetisen's moral character, INS was permitted, but not required, to consider conduct preceding the five-year moral character period. Affirming based on count four... Can I ask you a question? Does that mean... I'm sort of thinking about this case in terms of line drawing. It seems like the way the statutes fit together is you have the requirements for naturalization, you have the five-year period, you have a catch-all, and the government can do its due diligence. People have to answer questions, you know, honestly. And, you know, then afterwards you have a different set of rules that apply to how you go about denaturalizing somebody. And I think that's important, and maybe I'm wrong, you can correct me, because just sort of big picture, we have, I don't know, 20 million, 25, 30 million naturalized citizens in the country. And I'm concerned about sort of blurring the line between what happens before and what happens after you're naturalized by sort of inappropriately looking back when it's not clear that that's what is in the statute. Does that make sense? It does, and I agree, Your Honor, that because the catch-all moral character provision is discretionary, the government's burden in seeking denaturalization based on that provision should, the government should be held to that very high standard of proving its case by clear unequivocal and convincing evidence, because the presumption should be that Is that provision in the denaturalization side of the equation, or the naturalization requirement sort of side? It's on the naturalization requirement side. So why are you reading it into the denaturalization side, just as a matter of my sort of concerns about, you know, the implications to the 25 or 30 million naturalized citizens in this in this country? So the government is reading it into the denaturalization side because they say that Ms. Yedison was ineligible at the time of her naturalization, and that she was ineligible because, had INS been aware of her alleged war crimes, that INS would have denied naturalization in 2002. And so the standard for denaturalization that the government has the burden to bear is to show that the applicant was ineligible at the time of naturalization, by reference to those naturalization standards. An affirming judgment on this basis would require resolution of the government's theory, had Ms. Yedison disclosed her involvement in the Trusina attack, INS would have denied her application. And this theory is insufficient to sustain the judgment, because viewing the pleadings in the light most favorable to Ms. Yedison, the government was at least on inquiry notice of her involvement in the attack. The government claims at pages 33 to 34 of the Apalis brief, that had Ms. Yedison disclosed her military service, INS would have investigated further and would have discovered that she had committed war crimes. But below, Ms. Yedison repeatedly alleged that she had fully disclosed her military service. That appears on pages 16, 17, and 19 of the excerpts of record. Counsel, is she saying that she fully disclosed it in her naturalization application? No, Your Honor, she says that she fully disclosed it in her application for refugee status, and that it was her understanding that the naturalization application was asking if anything had changed since her prior disclosures. We also don't know what she disclosed in her application for permanent resident status, because the government did not attach that application to the complaint. So the record is actually incomplete. But even if INS were to decide to consider Ms. Yedison's pre-regulatory period conduct, it was still obligated to consider whether her conduct during the statutory period exhibited a reform of character. And that requirement is in 8 CFR 316.10a2. In the Santa Maria Ames case, a naturalization case, this court held that it was error for a district court to deny naturalization based on pre-regulatory period conduct without providing the applicant an opportunity to present evidence of their moral character during the statutory period. Do you have a case that says the same thing for denaturalization? I don't, Your Honor, but the the same standard should apply in the denaturalization context as well. Why should the same standard apply if we're to keep the two as separate philosophical concepts, why should we then merge the standards that apply to them? In a denaturalization proceeding, the court is considering whether the applicant was eligible for naturalization. And Santa Maria Ames held that part of that analysis is looking at the applicant's statutory period moral character. And so therefore, because the analysis here is whether Ms. Yedison was eligible for naturalization, the court must look at the full picture just as the court has directed district courts to do in naturalization proceedings. So are you saying that the same standard should apply in naturalization and denaturalization cases? The analysis of eligibility is the same, yes. However, in a denaturalization case, the burden is on the government to prove by clear, unequivocal, and convincing evidence that the citizen was not eligible at the time of naturalization. Can I ask a question? So I'm still confused. In the requirements for naturalization section, subsection E, it says in determining whether an applicant has sustained the burden of establishing good moral character and other qualifications, the attorney general shall not be limited to the applicant's conduct during the five years preceding the filing of the application. So I guess I'm still having trouble understanding how that's applicable just as a matter of sort of strict statutory construction to what happens after a person has become naturalized and, you know, the legal implication of that has happened. And you seem to be arguing that, well, you can go back and look at any time and see whether the person was eligible for naturalization based on moral character because of this section that I just mentioned, the requirements of naturalization section. And that seems to me to just be illogical and it seems to me to be circular and maybe dangerous because the statute doesn't say that. And I'm wondering if we're just making this more complicated than it, you know, than it needs to be. You know, there are sections that deal with how you denaturalize someone on the basis of fraud or sort of per se lead to prohibitions. But this section itself, using it as part of the denaturalization argument, it just seems to me it leads to all sorts of potential, you know, untoward, unknowable consequences. And maybe I'm missing something. Your Honor, I agree that re-evaluating the discretionary decision at the denaturalization stage is concerning. I believe that the illegal procurement language in... Well, why is it disconcerting? Why is it concerning? Because there should be a presumption that the government has already exercised its discretion in deciding to allow someone to naturalize. You don't see it as opening the door to denaturalizing folks who have been here 20 years and they, you know, they commit a crime and the argument is, well, you know, that reflected on your character pre-naturalization, therefore we're gonna denaturalize you. I agree, Your Honor, that it could open that door and that is part of the reason that is concerning. We respectfully ask that the court reverse the district court's judgment as... I know you want to reserve some time for a rebuttal and that's fine, but just to make sure I understand what your position here is, as I read the briefs, is that the government really doesn't, you start off with saying the government doesn't defend the district court's decision and points to count four or the other count as an alternative basis for us to affirm. But as I understand, listening to you and reading the cases and the regs, it would be extremely difficult, if not truly an overstretch, to say as a matter of law, that the government is nonetheless entitled to judgment. Is that right? That's correct. There essentially has to be an opportunity for her to be heard before the district court. That is correct, Your Honor. Okay. If the court has no further questions, I'll reserve the balance of my time. Thank you. Hear from the government. Thank you. Good morning. May it please the court. Congress requires that individuals who seek the high privilege of citizenship must scrupulously comply with every rule governing the naturalization process. You don't have to be perfect to become a United States citizen, but you can't lie or omit information, and you especially can't commit war crimes and then lie or omit that information. Sammy Edison did exactly that, and the district court was right to revoke her unlawfully procured citizenship for three reasons. First, she made willful misrepresentations on her naturalization application. Second, she didn't have good moral character at the time she naturalized. And third, laches categorically doesn't apply, and as the district court found, it doesn't apply on the facts in these pleadings. The material facts are not in dispute here, and we ask this court to affirm the judgment of the court below. I'll start with count five, which charges willful misrepresentation or concealment of a material fact. We believe that all of the elements of this count are established in the pleadings. First of all, there are misrepresentations in the naturalization application. In Alexa direct pages five and six, she states that she had not committed a crime for which she had not been arrested, and that she had no military service. We know now those representations were both false. The misrepresentations were also willful. As far as the military service, Ms. Yedison... How can you say they're false? I mean, she hadn't been convicted of committing a crime. We don't know the reasons behind her pleading guilty. We don't know that she felt that she had criminal culpability given the chaos of that terrible war. So how can you say that dogmatically, that she committed a crime, a crime that she sought to naturalize? So, Your Honor, she had committed a crime at the time because she had committed the murders. I mean, whether she thinks it was justified or her understanding of what the questions on the form meant, that that's a separate matter. But she had committed a crime. We know this objectively. And the government believes that based on the pleadings, she also subjectively knew that she had committed a crime. And I'll just give you three brief reasons. The first is which first of which is the court of Bosnia and Herzegovina. This is in the first instance verdict exhibit exhibit B to the complaint. Concluded that what she did was criminal at the time she did it and that she had committed it with the intent to commit a crime or awareness of a substantial likelihood that a crime would result. Paragraphs 27, 60 and 70. Second, is that these particular six murders were violations of society's most basic moral prohibitions. And so this is something these crimes are different than what someone might not know to be criminal. Like, for example, failing to pay a particular tax or failing to register. How is that true? You have a 20 year old woman. She's in the middle of this terrible chaos. She's ordered to do this terrible act. I'm sure there's tons of terrible acts taking place. And to necessarily say that she, you know, I guess that she had a choice to disobey this order or that she, you know, knew in the context of what she was going through that it was a crime seems like, you know, we certainly I'm not condoning it. It's horrific in every way. But, you know, I'm just I'm just concerned that characterization while accurate doesn't really capture the sort of reality of what people sometimes experience in war. Well, your Honor, I would point to the facts in our complaint that she has admitted or have been constructively admitted by operation of of Rule 8B-6. You know, the complaint exhaustively chronicles each sorted aspect of these crimes, which I won't go over exhaustively, but it's pages 23 to 28 of the excerpts of record. It's also in the Bosnian court's judgment. That's Exhibit B to the complaint. And I think the specifics of her crimes demonstrates exceptionally poor character that dug her a pretty deep hole as far as proving good moral character or demonstrating at the time that she naturalized. So that includes facts such as the fact that she attacked the village with the intent to leave no survivors, that she advocated killing all of the prisoners of war and civilians that were lined up against that wall, the fact that she was part of the firing squad and that she shot and killed these unarmed six prisoners, war and civilians, then went up to the bodies, shot them again. And also the the persecutory angle there. And as a final point on that, I think the court should also focus on the broad sweep of Question 15A in the naturalization application, the one asking if she'd ever committed a crime for which she had not at the time been arrested. This court in Forbes upheld the BIA's conclusion of willfulness there and quoted the BIA's focus on the broad nature of the inquiry in the form that was at issue in that case. And so this court agreed that it wasn't credible for the applicant there to assert that he didn't believe the correct affirmative answer was required. Well, I'm sort of conflicted. I don't want to take up too much time. And, you know, my colleagues may have lots of questions. I just I just was curious to your reaction to my sort of concern, the sort of broader concern about looking at the discretionary component and reading it backwards as a requirement, you know, for naturalization and using it as a component for the denaturalization analysis as well, because I just, you know, I'm concerned about the sort of rule of unintended consequences. Absolutely, Your Honor, and I'll just be very clear here that I'm going to be stepping away from the willfulness representation count here because what Your Honor is asking about goes to good moral character, which is on count four. But my reaction to that is to say Fedorenko, Fedorenko, the United States Supreme Court case 1981 was very clear that given the importance of United States citizenship, applicants have to meet every requirement that has been set out to obtain that citizenship. You know, I think also that we do see that case say that the good moral character catch all provision applies retroactively to denaturalization as well. That case does not, but this court in both Dong and in Joe affirmed rulings by the district court in denaturalization cases under regulations that were implementing the catch all provision at 1101 F. So that's where denaturalization was ordered under those provisions in this court affirmed. And in fact, it was in Joe was also in this same posture where it was reviewing a district court's judgment on a motion for judgment on the pleadings. I would also emphasize that we do see discretion very differently from Miss Yedison here. You know, Miss Yedison said that the good moral character provision is discretionary, thus on a rule 12 C, the court must withhold judgment on the pleadings because it must assume that discretionary determination would have gone in her favor. But naturalization does not have a purely discretionary component like, for example, permanent residence or for cancellation on removal, which is another immigration benefit this court sees frequently and which does have also a good moral character component, a case involving a person or an officer to find facts and then weigh them positive, V negative. Although an officer has some latitude in what facts to ask for and although the legal standards may be capacious, it is a cabined flexibility and there are outside limits. And so whatever cases might be near the line, this case is not one of them. The war crimes are beyond the pale. This is not a case involving simple assault or DUI or something of that kind occurring before the beginning of the statutory period. And I would point to this court's decision in Hussain for that reading of how these provisions work. The court, the opinion Hussain discussed the sister regulatory provision in 316.10 3 or B 3 3, not in terms of discretion, but in the same terms of weighing multiple factors. It also comports with how the Supreme Court in Meslenyak just three years ago talked about how naturalization has objective standards, leaving, quote, little to no room for the whims of particular adjudicators. And what about the whims of denaturalization down the road? I gave some examples when opposing counsel was arguing because, you know, again, my words to somebody that has been here hypothetically 20 years and they commit a crime at whatever time. And that factor then is used as a basis to denaturalize them. You know, notwithstanding the fact that they, you know, they met all of the requirements for naturalization because the argument is, well, you must not have had good moral character. You just didn't know about it. You know, now something happened 10 years after you've been naturalized and we can go back and think, God, you were bad now. You were bad. Then you got more poor moral character. We're going to institute denaturalization proceedings against you. And all of a sudden, the threat of denaturalization becomes something that everybody who's naturalized, at least potentially, may be confronted with. So a couple of responses to that, Judge, which are that a person can only be denaturalized, generally speaking, at least on the denaturalization. Is there anything incorrect about my hypothetical as a matter of not likelihood, necessarily, but but, you know, something that potentially could happen? The one thing I would point out, Your Honor, is that generally acts committed after naturalization cannot by themselves tend to be independent acts showing bad, poor, moral character. I'm simply asking you as a matter of being consistent with your argument, is what I described hypothetically possible? I don't think that's possible, Your Honor, respectfully, because of the additional protections that are in place in denaturalization proceedings. So having to get an affidavit of good cause from someone at the agency, which which we had here, you have to get the authorization of the U.S. attorney by statute. The United States does have a correspondingly higher burden in these cases, as opposed to at the initial naturalization stage. It's theoretically possible. And I don't want to beat I don't want to beat this in any further, correct? It is possible. Can I just I want to understand what happened at the district court. You didn't move on this basis for judgment on the pleadings, did you? Yes, Your Honor, we did on both count four and on count five. The district court didn't didn't follow this path, though, is that correct? That's correct, because both counts request identical relief, which is to say a ratification of her order of naturalization. The district court, after granting judgment on count four, thought it was unnecessary to reach count five. But it has been it was briefed below and has been up here as well. But I guess the point is, is that the district court sort of went off on what he thought, I guess, was an easier, clearer path to entering a judgment as a matter of law against a pro se defendant. Is that right? Your Honor, I I'm not sure if I if I necessarily agree about it being an easier path, but I it. Well, she was had the conviction and he just said, that's the end of the story. Correct. You know, the district court cited useful provisions, you know, as we point out in our brief up here, you know, they demonstrate the immigration and national nationalities at nationality acts, special disapproval of things like murder, false statements, persecution. And although we believe that the district court used those improperly to find that they were per se bars, which isn't the case because her conviction came after naturalization, we believe that those provisions are still relevant. And, you know, the district court should have been looking at them. But we believe that, you know, just listen, listen to the discussion. And as I mentioned earlier, when I read this, it just it strikes me as really difficult to say that on this on the pleadings, just as they are, that as a matter of law, when we're supposed to draw inferences and read the pleadings in favor of the non-moving party, that looking at what happened in pre or pre-application, pre, pre-refugee status, as a matter of law means that in the five year period, she can't show good moral character. Just it just seems that that given what's going on, what's going on here, it just seems that she should have an opportunity to be heard. She may have a difficult case, but it strikes me as hard, tough for the district court to just enter judgment on your theory on the pleadings. Maybe after being after she has an opportunity to be heard, she'll lose. And, you know, she's got a tough case. But that's the problem that I have with this case. Your Honor, I realize I'm out of time, but if I may briefly respond, I think that my response is that, you know, to also point to Rule 12C and point at the posture of this case. And there's a number of facts that she has admitted or has constructively admitted in her. She had three chances below to respond to our complaint, her answer, her first response to our 12C motion, and then her second amended response. ECF entries 5, 27 and 31 below. But also, I would argue that this was her chance to respond to these allegations that the government has brought about how she lacks good moral character, how she's made misrepresentations and, you know, anything related to the other three counts for which we did not move on for judgment on the pleadings. So that was her chance to deny, for example, that she lacked good moral character. But we didn't see anywhere in those three documents that she did actually deny that fact. Okay. Thank you, Your Honors. We respectfully ask the court to affirm. Okay. Thank you. Well, if you have some time for rebuttal. I'd like to make just two brief points, Your Honor, if I may. First, with respect to the willful misrepresentation count, the district court did not reach that count below after finding that it was moot. And therefore, this court should decline to reach that count as well. But if it does, willfulness requires knowledge of the falsity of the representation. That's in Forbes at 442. And it requires that the misrepresentation was both deliberate and voluntary. And that's in Arango at 672 F. 3rd, 988 at 995. Under that standard, neither of Ms. Yetison's alleged omissions was willful. With respect to count four, the government has argued today that Ms. Yetison dug herself a pretty deep hole. Even assuming that's true, under Santa Maria Ames, Ms. Yetison is entitled to an opportunity to put forward evidence of her good moral character during the statutory period. It is impossible to resolve this case on a 12C because Ms. Yetison was denied that opportunity. That would include not just considering Ms. Yetison's conduct during the period, but also the full facts and circumstances surrounding her involvement in the Trustina attack. The fact that she was 20 years old and the only woman in her unit, that she had family members who had previously been killed during the Civil War, that she had been sexually assaulted on multiple occasions by members of her unit, and that she was ordered to participate in the attacks. Ms. Yetison is entitled to an opportunity to put forward that evidence and additional evidence of her good moral character during the statutory period. We respectfully request that this court reverse the judgment of the district court and remand the case for further proceedings. Yes. Thank you, counsel. We appreciate your arguments this morning. And thanks to pro bono counsel. We really do appreciate lawyers who are willing to take on cases. It's extra work, but it helps our process very much. And thank you to the government, too. The case is well argued and well briefed. And at this time, it's submitted. Thank you, Your Honor.
judges: Paez, Rawlinson, Pregerson